Finch, J.
The learned counsel for the appellant states the question of fact involved in this case, and which he claims has become a question of law, in these words, viz.: “ Did defendants know that Sandford was using cashier’s checks in his private transactions, or had they a right to believe that the transactions were for the bank?” Of course this inquiry is primarily a question of fact, upon which the finding of the referee against the plaintiff is beyond our review, unless it proves to have been made without any evidence tending to its support. The appellant, therefore, has undertaken the difficult task of demonstrating that there is no such evidence, so that the finding of the referee is an error of law for which we may reverse the judgment rendered. The learned counsel who took upon themselves this difficult duty do not at all disguise their consciousness of its character, but have made the effort with great care and ability, with a close analysis of the facts, and with a confidence that we on our part will examine the whole testimony and patiently consider the argument founded upon it before coming to a final conclusion. We have *713 endeavored to do so, and have, carefully studied the confused and somewhat singular accounts of the defendants, upon the form of which the plaintiff mainly relies.
The defendants testify positively that they never knew or suspected that Sandford was dealing for himself, but always supposed and believed that the whole current of the account was with the plaintiff bank, through Sandford as its agent and representative. This evidence tends to raise an issue of fact, but is met by a reference to the admissions of the defendants that they personally conducted some of' the dealings; that they had never examined the accounts until after Sandford absconded, and did not-know the form in which they appeared upon their own books, and, therefore, that their clerks who conducted the dealings may have known that Sandford was acting for himself, in which event the defendants would be chargeable with their knowledge. But it is admitted that in the beginning of the transactions Sandford was acting for the bank, and it is not at all certain that the change which gradually marked the character of the account was such as to involve a necessary knowledge, either on the part of defendants or their subordinates, of a change in the principal with whom they were dealing. While it is true that the bank could not lawfully speculate for itself and risk capital and deposits in that sort of stock gambling which ruins so many both in character and fortune, yet it is equally true that its customers could do so if they pleased, and it was possible to believe that they bought upon margins through the agency of the bank, without a disclosure of their names ; and that the defendants assumed and believed such to be the fact is an inference more or less supported "by two considerations. If they believed or suspected that Sandford was using the money of the bank upon his own personal ventures, they knew him to be morally if not legally a thief, and consciously aided and abetted him in his deliberate and persistent robbery of those who trusted him, and we should not charge upon the defendants so grave a wrong unless upon evidence not capable of any other reasonable explanation. And, again, there is an item of proof which quite plainly indicates what the understanding of the brokers was. It is the letter of June 26, 1869, addressed to Sandford without adding his official title, a circumstance in other instances used to strengthen an inference that defendants were consciously dealing with Sand-ford personally. That letter tends to rebut such an inference, ft reads: “ Please send us a check for $10,000. We should like to keep a margin of two per cent, at least on your sales, as this seems to be the figure which your customers calculate to lose on their operations. We hope they will do better on this lot.” The letter assumes as a fact well understood that the bank, through Sandford, was acting for its customers, and that the losses, if any, would fall upon them, and is all the more significant, because addressed in form to Sandford personally.
But the appellant contends that any such explanation is precluded by the form of the accounts as they appear upon defend *714 ants’ books, and that these show conclusively the guilty knowledge charged. They certainly tend in that direction, but the natural inference to which they point is made more or less doubtful and uncertain by an examination of their items. The first account was headed “ W. H. Sandford, Cashier,” but, after one or more pages had been filled, the heading changed by the omission of the word “ cashier.” Then there came accounts headed “W. H. Sandford, stock account,” “W. H. Sandford, gold1 account,” and “ Central National Bank.” Why these separate accounts were kept, if all the dealings were with the bank, we cannot accurately know, since Austin, the book-keeper, who made the separation, for some reason influencing him, is dead, and we are left to inference and supposition. It is very forcibly argued on behalf of the plaintiff that the necessary and inevitable inference must be that, while some of the dealings were with the bank, and substantially those which represented cash purchases and sales, and so respected investments made or ended, yet those which were of a speculative character and were dealings on margins are significantly posted to Sandford personally, or in the stock or gold account. If that was invariably true, the inference asserted would be quite difficult to avoid, but the details of the account so unsettle and weaken the inference as to leave it doubtful whether it should be drawn at all.
The facts are, and the referee has so found, that purchases and sales which appear upon the book of original entry, and were ■entered at the moment of the transaction, as for and on account of Sandford, cashier, are quite commonly posted in the seemingly personal account of W. H. Sandford. .The referee says in his tenth requested finding: “In these various accounts were entered and posted items which, on the books of original entry, ■stood to the credit of or charged against W. H. Sandford, or W. H. Sandford, Cashier, or the Central National Bank, such names being used interchangeably and as of identical meaning and representing one and the same account.” Perhaps a better view of the situation will follow a few actual instances taken from the books. Thus, in the account headed “ Central National Bank,” very many of the debits and credits appear on the purchase and sales book as being the purchases and sales by W. H. Sandford. In the account headed “W. H. Sandford, Cashier,” appear credits which stood on the purchase and sales book, and even on the cash book, in the name of W. H. Sandford. And in the account of W. H. Sandford items which, on the purchase and sales book, and sometimes on the cash book, appeared as transactions ■of Sandford, cashier, are quite numerous; many specific examples of this sort of confusion are given in the testimony of one of the ■defendants. A single one will suffice. On the cash book, under date of April 17, 1868, is a debit to William H. Sandford of over $27,000, made up of several specific items, and there appears on the purchase and sales book an entry corresponding and identical, both in description and amount, showing the transaction to have been with William H. Sandford, cashier. While these things are true of the accounts to which I have referred, they do not seem to *715 characterize the W. H. Sandford stock account. An abstract of that was put in evidence, and all the original as well as posted entries appear in the name of Sandford, without an official title. That fact weighs heavily -in favor of the plaintiff, but is to some extent weakened and rendered ambiguous by the further fact that the first item in it is the exact footing of the preceding account, which was at first Sandford, cashier, and then ■simply Sandford. Mo certain and necessary inference, sufficient to support a conclusion of law, can be based upon such ambiguous and indecisive facts.
Mow, I do not say what my own judgment would have been •as a referee on these facts; but I am convinced that we are not at all justified in reversing the finding made and its affirmance by the general term.
There is very much more .about the case, any adequate discussion of which would unduly prolong an opinion busy with facts only—such as the rendition of accounts to Sandford in his personal name, which might happen without special intention, and the suit for a balance against Sandford personally, which, however, was after he had absconded and the bank officers had notified the defendants of the real nature of Sandford’s action—but enough ■has been said to indicate in a general way the reasons why we deem the question debated essentially one of fact which we are not at liberty to review.
The judgment should be affirmed, with costs.
All concur.